UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ALGER DYNAMIC OPPORTUNITIES FUND, ALGER SICAV - ALGER DYNAMIC OPPORTUNITIES FUND, ALGER SICAV - ALGER WEATHERBIE SPECIALIZED GROWTH FUND, ALGER WEATHERBIE SPECIALIZED GROWTH FUND, ALGER WEATHERBIE SPECIALIZED GROWTH PORTFOLIO, WEATHERBIE GROWTH FUND, L.P., and WEATHERBIE LONG/SHORT FUND, L.P., Individually and On Behalf of All Others Similarly Situated

Plaintiffs,

v.

ACADIA PHARMACEUTICALS INC., and STEPHEN R. DAVIS,

Defendants.

Case No. 3:24-cv-00451-WQH-MSB

**ORDER FOR THE PRODUCTION OF DOCUMENTS AND ESI**

Judge: Hon. Michael S. Berg

# I. PURPOSE

Defendants Acadia Pharmaceuticals Inc. and Stephen R. Davis ("**Defendants**") and Plaintiffs Alger Dynamic Opportunities Fund, Alger SICAV - Alger Dynamic Opportunities Fund, Alger SICAV - Alger Weatherbie Specialized Growth Fund, Alger Weatherbie Specialized Growth Fund, Alger Weatherbie Specialized Growth Portfolio, Weatherbie Growth Fund, L.P., and Weatherbie Long/Short Fund, L.P. (collectively, "**Plaintiffs**," and together with Defendants, the "**Parties**") hereby stipulate that this Order governs the form of the Parties' production of electronically stored information in the above-captioned case. Nothing in this Order is intended to or shall be construed to expand or limit the Parties' obligations under the Federal Rules of Civil Procedure ("**FRCP**"), this Court's Civil Local Rules, or the Federal Rules of Evidence ("**FRE**"). To the extent a Party reasonably believes that compliance with this Order imposes an undue burden with respect to any protocol or source, the Parties shall promptly confer in an effort to resolve the issue.

The Parties agree to make a good faith effort to identify discoverable sources of ESI and provide for the production of all information in a reasonably usable form accompanied by metadata sufficient to accurately search and sort each Party's production, as set forth in this Order. The Parties agree to meet and confer if they identify discoverable ESI sources that are not adequately covered by the technical specifications in this Order and agree to modify as needed.

# II. DEFINITIONS

The following definitions apply to this Order:

**A.** "**Database**" means an electronic collection of structured data (often maintained in a non-custodial manner).

**B.** "**Family**" means a group of static documents maintained as a single unit in the ordinary course of business (*e.g.*, an email and its attachments).

**C.** "**ESI**" or "**Electronic Document**" means electronically stored information as defined in FRCP 34.

**D.** “**Extracted Text**” refers to the result of the process by which content of an Electronic Document is electronically extracted during e-discovery processing.

**E.** “**Native Format**” means the default format of ESI created by its associated software program and also includes the export format of documents that are not maintained in a usable Native Format.

**F.** “**Optical Character Recognition**” **or** “**OCR**” refers to the result of the process by which a hard copy or non-searchable Electronic Document is scanned by a computer to capture text from the face of the document.

**G.** “**Privileged Information**” refers to information subject to a claim of attorney-client privilege, work-product protection, or other applicable privilege or immunity.

**H.** “**Producing Party**” means any Party to this proceeding who produces documents or information under this Order.

**I.** “**Receiving Party**” means any Party to this proceeding who receives documents or information under this Order.

## III. PRODUCTION FORMAT

Subject to the exceptions for documents to be produced in Native Format, documents will be produced as Bates-stamped tagged image file format (**“Tiff”**) images accompanied by an image load file, a data load file with fielded metadata, document-level extracted text for ESI, and OCR text for scanned hard copy documents and ESI that does not contain extractable text. Detailed requirements, including files to be delivered in Native Format, are below.

Notwithstanding the foregoing, documents and ESI previously produced by Defendants in *City of Birmingham Relief and Retirement System and Ohio Carpenters' Pension Fund v. Acadia Pharmaceuticals Inc., et al.*, Case No. 3:21-cv-00762-WQH-MSB (S.D. Cal.) (the “Class Action”), and reproduced to Plaintiffs in this Action, *see* ECF No. 46, shall be produced in the same format in which they were produced in the Class Action.

**A. De-duplication.** The Parties will use industry standard MD5 or SHA hash values at the Family level to globally deduplicate all files identified for production. Stand-alone Electronic Documents will not be compared to email attachments for deduplication purposes. Hard copy documents containing handwritten notes will not be considered as duplicative of any other document.

**B. Document Unitization.** Where documents with attachments are produced, they will be attached in the same manner as included in the original file. Unless documents contain solely Privileged Information, Parties will produce each Document in a Family that contains relevant information. Where documents are produced and the full Family is not included, the Producing Party will identify the missing attachments by means of a "place holder" file that notes the reason(s) why the document was not produced.

**C. Production Delivery.** Productions shall be delivered via secure online data transfer or on an external hard drive if the size of a production makes online transfer impractical.

**D. Encryption.** To maximize the security of information in transit, the Parties shall encrypt any media on which documents are produced. In such cases, the Producing Party will transmit the encryption key or password and applicable instructions to the Receiving Party, upon receipt of the encrypted media.

**E. Tiff Image Requirements**

**1.** Tiff images will be produced in black and white, 300x300 dpi Group IV single-page format and will be consecutively Bates-stamped.

**2.** Images will include the following content where present:

**a.** For word processing files (*e.g.*, Microsoft Word): comments, "tracked changes," similar in-line editing and all hidden content

**b.** For presentation files (*e.g.*, Microsoft PowerPoint): speaker notes, comments, and all other hidden content.

**c.** For spreadsheet files (*e.g.*, Microsoft Excel, if applicable): hidden columns, rows, and sheets; comments, and any similar in-line editing or hidden content.

**F. Native Production Requirements.**

**1.** Spreadsheet files (*e.g.*, Microsoft Excel and .csv files) shall be provided in Native Format with a single placeholder image bearing the Bates number and confidentiality designation.

**2.** The Parties may use a Native File redaction tool (*e.g.*, "Blackout") to redact Privileged Information from documents produced in Native Format as long as the Receiving Party can easily identify the redactions.

**3.** When redaction of a spreadsheet is necessary in image format, a redacted full Tiff version may be produced if the spreadsheet is manually formatted for optimal printing. If the spreadsheet requiring redaction is not reasonably usable in Tiff format, the Parties will meet-and-confer to determine a suitable production format.

**4.** Media files (*e.g.*, .mp3, .wmv) will be produced in Native Format with a single placeholder image bearing the Bates number and confidentiality designation.

**5.** The Parties will meet-and-confer to discuss a suitable production format for any proprietary or non-standard file types that require special software or technical knowledge for review, Databases and Database reports, and any document types that cannot be accurately rendered or reviewed in image format.

**6.** The Parties may request color copies of any documents that cannot be accurately reviewed in black and white Tiff format. Reasonable requests for color documents should not be refused.

**G. Load Files.** A Concordance compatible data load file will be provided with each production volume containing a header row listing all metadata fields included in the volume. Image load files will be produced in Concordance/Opticon compatible format.

**H. Extracted Text/OCR**.

**1.** Electronically Extracted Text must be provided if available for documents collected from electronic sources. Text generated via OCR shall be provided for all documents that do not contain electronically extractable text (*e.g.*, non-searchable PDF files or JPG images), for documents redacted in image format, and hard copy documents. The Parties will not degrade the searchability of documents as part of the document production process. However, the Parties acknowledge that, due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR.

**2.** Document text will be produced as separate, document-level text files and will not be embedded in the metadata load file.

**3.** Text files will be named according to the beginning Bates number of the document to which they correspond.

**4.** If a document is provided in Native Format, the text file will contain the Extracted Text of the native file.

**I. Metadata.** The Parties agree to produce the metadata fields listed in Appendix A where applicable. Aside from metadata fields generated during e-discovery processing and production (*e.g.*, Bates numbers, hash and custodian

values), the Producing Party is not obligated to produce metadata from a document if metadata is not reasonably available.

**J. Embedded Objects.** Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent-child relationship preserved. The Parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

**K. Hyperlinked Files.** The Producing Party shall not be required to produce documents solely because they are hyperlinked within a produced document, email, chat message, or other communication. To the extent a Receiving Party seeks production of a particular hyperlinked document not otherwise produced, the Receiving Party may identify the hyperlink and associated Bates number(s), and the Parties shall meet and confer regarding whether collection and production of the identified document is reasonable, proportional to the needs of the case, and technically feasible.

**L. Compressed File Types.** Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) shall be decompressed so that the lowest-level document or file is extracted.

**M. System Files.** ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards and Technology as it exists at the time of de-NISTing. Other file types may be added to the list of excluded files if they clearly do not have user-created content and by agreement of the Parties.

**N. Email Threading.** The Parties may use email thread suppression to avoid duplicative review of information, but they shall produce all lesser-included emails that are themselves responsive and non-privileged.

**O. Password-Protected, Encrypted, or Proprietary-Software Files.** With respect to any ESI items that are password-protected or encrypted within the scope of review, the Producing Party will take reasonable steps based on industry

standards to break the protection so that the documents can be reviewed and produced if appropriate. In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to a document request, remain for a particular custodian after such reasonable efforts have been made, the Producing Party shall advise the Receiving Party. ESI that cannot be reviewed because proprietary software is necessary to view the ESI will be disclosed to a Receiving Party, and the Parties shall meet and confer regarding the next steps, if any, with respect to such ESI.

**P. Personal Data Redactions.** In addition to the redactions permitted as set forth in Paragraph IV below, a Producing Party may redact personal information to the extent that the information falls within one of the following categories:

**1.** the information relates to irrelevant personal medical or health issues of an individual; or

**2.** social security numbers, taxpayer-identification numbers, driver's license numbers, passport numbers, financial-account numbers or other bank account information, or personal passcodes. Such redactions should be identified as "Redacted – Personal Data" on the document.

## IV. DOCUMENTS PROTECTED FROM DISCOVERY

Documents containing both Privileged Information and responsive non--privileged Information will be produced with the Privileged Information redacted in such a way as to show the location of the redaction within the document.

**A. No Waiver.**

**1.** Pursuant to FRE 502(d) and the Stipulated Protective Order in this Action, nothing in this Order shall require disclosure of Privileged Information, and the production of Privileged Information is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum

protection allowed by FRE 502(d). The provisions of FRE 502(b) do not apply.

**2.** FRCP 26(b)(5)(B) governs the proper procedure for the notification and return of Privileged Information when identified by the Producing Party.

**B. Reservation of Rights.** This Order will not serve to limit a Party's right to conduct a review of documents, ESI, or information (including metadata) for relevance, responsiveness, and/or segregation of Privileged Information before production.

**C. Production of Privilege Logs.** Except as provided otherwise in Paragraph IV.D below, for any document withheld in its entirety or produced but redacted, the Producing Party will produce privilege/redaction logs in Microsoft Excel format or any other format that permits electronic sorting and searching.

**D. Privilege Log Requirements**. The Parties shall generally prepare and serve privilege logs in accordance with Fed. R. Civ. P. 26(b)(5)(A), including any descriptions of the documents and/or privileges necessary to enable other Parties to assess the claims of privilege, and have agreed to provide the following additional information:

**1. Metadata Log:** To the extent applicable, each Party's privilege log only needs to provide objective metadata (to the extent it is reasonably available and does not reflect privileged or protected information) and an indication of the privilege or protection being asserted.

**a.** Objective metadata includes the following (as applicable to the document types as shown in Appendix A):

**(i)** A unique privilege log identifier

**(ii)** Custodian

**(iii)** FileName

**(iv)** Email Subject

**(v)** Author

**(vi)** From

**(vii)** To

**(viii)** CC

**(ix)** BCC

**(x)** DateCreated

**(xi)** DateSent

**E. Challenges to Privilege Claims.** Following the receipt of a privilege/redaction log, a Requesting Party may identify, in writing (by Bates/unique identification number), the particular documents that it believes require further explanation. The Producing Party shall endeavor to respond to such a request within 21 days. If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the matter may be brought to the Court. All challenges to privilege claims must be made no later than 60 days before the fact-discovery cut-off.

**F. Timing for the Production of Privilege Logs**. Producing Parties will provide privilege logs, pursuant to the terms of Fed. R. Civ. P. 26(b)(5)(A) and this Order, for documents with privilege redactions and/or withheld from production on the basis of privilege on a rolling basis, as soon as practicable following the production of such documents. Provided, however, that each Producing Party will provide a final, complete privilege log no later than 90 days before the fact-discovery cut-off.

## V. ADDITIONAL ESI MATTERS TO BE ADDRESSED BY THE PARTIES

**A.** If necessary, the Parties shall meet and confer in good faith and attempt to reach agreement regarding the following issues:

**1.** reasonable search terms or other tools for identifying potentially relevant ESI;

**2.** custodial files to be searched for ESI (*e.g.*, those persons whose ESI files are to be searched for responsive emails and other ESI);

**3.** prioritization of production of particular categories of ESI or particular custodians' ESI;

**4.** a schedule for completion of discovery of ESI from both prioritized and "non-prioritized" sources or custodians; and

**5.** protocols for the use, if any, of (a) technology assisted review (**"TAR"**), (b) continuous active learning (**"CAL"**) models, or (c) other computer- or AI-assisted review.

Dated: August 31, 2026 COOLEY LLP

By: */s/ Koji F. Fukumura*
Koji F. Fukumura (189719)

Attorneys for Defendants
Acadia Pharmaceuticals Inc. and
Stephen R. Davis

Dated: August 31, 2026

DUCKOR METZGER & WYNNE, A Professional Law Corporation
John C. Wynne
101 West Broadway, Ste. 1700
San Diego, CA 92101
Telephone: (619) 209-3000
wynne@dmwplc.com

ROLNICK KRAMER SECURITIES LITIGATION LLP

By: */s/ Lawrence M. Rolnick*
Lawrence M. Rolnick (*pro hac vice*)

Lawrence M. Rolnick (*pro hac vice*)
Marc Kramer (*pro hac vice*)
PENN 1, Suite 3401
One Pennsylvania Plaza
New York, NY 10119
Telephone: (212) 597-2838
lrolnick@rksllp.com
mkramer@rksllp.com

Michael James Hampson (*pro hac vice*)
Nicole Castiglione (*pro hac vice*)
300 Executive Drive, Ste. 275
West Orange, NJ 07052
Telephone: (212) 597-2820
mhampson@rksllp.com
ncastiglione@rksllp.com

Attorneys for Plaintiffs

**Appendix A - Metadata.**

1. **BegBates** -- Beginning Bates number.
2. **EndBates** -- Ending Bates number.
3. **BegAttach** -- Bates number of the first page of a Family range.
4. **EndAttach** -- Bates number of the last page of a Family range.
5. **ParentID** – Parent Bates number, populated only for child records.
6. **PageCount** -- Number of pages in a document.
7. **FileExtension** -- Original file extension as the document was maintained in the ordinary course.
8. **FileSize** -- File size in bytes.
9. **DocTitle** -- document title as stored in file metadata or a cloud repository.
10. **DocSubject** -- Any value populated in the Subject field of the document properties.
11. **Custodian** – Primary custodian full name.
12. **All Custodians** – All Custodians from whom a record was collected.
13. **Author** -- Document author information for non-email.
14. **LastSavedBy** – User who last saved a record.
15. **From -** Sender of an email or Chat Communication.
16. **To -** Recipient of an email or all recipients of a Chat Communication.
17. **CC**
18. **BCC**
19. **Email Subject**
20. **IntMsgID**
21. **Collaboration Channel/Chat Name –** Name of the channel or chat where the Chat Communication occurred.
22. **Chat Conversation ID** – Unique ID to identify all messages and attachments within a Chat Communication channel/thread (i.e., messages involving the same participants or occurring within the same chat).

23. **DateCreated** -- File date and time created as extracted from the Native File.

24. **DateModified** -- File date and time modified as extracted from the Native File.

25. **DateLastSaved** – File date and time last saved as extracted from the Native File.

26. **DateSent** -- Date and time sent.

27. **DateReceived** -- Date and time received.

28. **FileName** -- Name of the file as maintained in the ordinary course of business with extension.

29. **Hash** -- The hash value generated at processing.

30. **TextPath** -- The path to the text file for each record in the production volume, including filename.

31. **NativePath** -- The path to the Native Format file on the delivery media, including the file name (if a NativeFormat file is provided).

The parties' stipulation is adopted and entered as an order of the Court.

IT IS SO ORDERED.

Date: September 2, 2026

THE HONORABLE. MICHAEL S. BERG
UNITED STATES MAGISTRATE JUDGE